Mueller Co. v. US Pipe & Foundry        CV-03-170-JD   01/22/04
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Mueller Co. and
Mueller International, Inc.

   v.                                     Civil No. 03-170-JD
                                        Opinion No. 2004 DNH 018
United States Pipe and Foundry Co.


O R D E R


The parties have cross-moved for judgment on the
pleadings on the counterclaim by defendant United States Pipe
and Foundry Co. ("U.S. Pipe") for a declaratory judgment that
its design for a fire hydrant does not infringe any of the
plaintiffs' "trade dress or other rights."  Each side objects
to the other's motion.


Background

Both Mueller Co. ("Mueller") and U.S. Pipe manufacture
fire hydrants.  Mueller claims that its hydrants have a
distinctive trade dress, which includes certain fluting and
beading elements.  The trade dress for these hydrants was
federally registered in 1996 by Mueller International, Inc.
("MII") and subsequently licensed to Mueller.  The parties
agree that more than ninety-five percent of the 15,000
municipal water distribution systems in the nation specify or

approve the use of Mueller's hydrants.

The plaintiffs allege that in March 2003, U.S. Pipe began marketing a hydrant with a design "substantially similar to" and "likely to be confused with" their hydrants. The plaintiffs responded by commencing this action, which asserts a variety of trademark and unfair competition claims.[1] They also filed a motion for a preliminary injunction seeking to prevent U.S. Pipe from selling the hydrant in question or any other hydrant with an appearance confusingly similar to that registered by MII.

In its answer, U.S. Pipe admits that "the outer appearance of the upper barrel" of a hydrant it displayed at a March 2002, trade show is "physically similar" to that of a hydrant sold by Mueller and referred to as the Centurion. U.S. Pipe also acknowledges that it represented that the components of its hydrant were interchangeable with those of the Centurion. U.S. Pipe disclaims any "possible confusion as to the source of [its] hydrant," however, because the hydrant "prominently and conspicuously bears the 'U.S. Pipe' inscription. . . ."

---

[1]The court previously granted U.S. Pipe's motion to dismiss counts III and IX of the plaintiffs' complaint. Mueller Co. v. United States Pipe & Foundry Co., 2003 DNH 168, 2003 WL 22272135 (D.N.H. Oct. 2, 2003).

2

U.S. Pipe's answer also includes a counterclaim against the plaintiffs in three different counts, only the first of which is at issue here. In support of this count, U.S. Pipe avers that Mueller's market dominance has caused most municipalities to insist that their suppliers provide only Mueller hydrants and replacement parts. U.S. Pipe therefore alleges that it envisioned a hydrant which would be interchangeable with the Centurion, and the replacement parts of which would be interchangeable with Mueller's. This hydrant, displayed at the trade show, was designed to meet the "narrowly drawn, Mueller-driven specifications adopted by most municipalities . . . ." U.S. Pipe claims that it decided to forego manufacturing this hydrant, however, after being served with the complaint in this action. For their part, the plaintiffs acknowledge in their reply to the counterclaim that U.S. Pipe "represented that it would not continue producing" the hydrant. Furthermore, on July 2, 2003, the parties jointly requested an order enjoining U.S. Pipe from selling the hydrant "or any fire hydrant incorporating the fluting and beading design elements of the [registered] trade dress" during the pendency of this action.[2] The court issued this

_____

[2]This restriction limits activity in the United States only.

3

order, which also effected a withdrawal of the plaintiffs' motion for a preliminary injunction, on July 8, 2003.

U.S. Pipe states in its counterclaim that it "opted instead to effect a re-design" of the hydrant in a fashion depicted in an exhibit to the counterclaim (the "redesigned hydrant"). The plaintiffs admit that the hydrant pictured "does not appear to have features that would be termed 'beading' or 'fluting,'" but that they nevertheless objected to the design. They dispute, however, U.S. Pipe's characterization of the basis of their objection. The plaintiffs also deny U.S. Pipe's allegations that the redesigned hydrant does not infringe any of their federal or common-law trademark rights, which U.S. Pipe makes in support of its counterclaim for a declaratory judgment to that effect.

U.S. Pipe now moves for judgment on the pleadings on its counterclaim on the ground that the plaintiffs have "not asserted any counterclaim alleging that U.S. Pipe's newly designed fire hydrant infringes any of [their] intellectual property rights" and that this "failure to assert such a counterclaim precludes [the plaintiffs] from ever asserting it in the future." The plaintiffs explain that they did not seek this relief because they did not know at the time they filed their reply to the counterclaim that U.S. Pipe had yet "made,

4

marketed, or sold" the redesigned hydrant, as the counterclaim does not contain any allegations to this effect. The plaintiffs also cross-move for judgment on the pleadings on the counterclaim on the ground that, in the absence of such allegations, the issue of whether the redesigned hydrant infringes the plaintiffs' trademark rights is not ripe for adjudication.

For reasons which will appear, the court will consider the parties' motions in reverse chronological order.

I.   The Plaintiffs' Motion for Judgment on the Pleadings

A challenge to a claim as unripe amounts to a motion to dismiss for lack of subject matter jurisdiction. See Ernst & Young, Inc. v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995). Here, the plaintiffs have chosen to attack the court's subject matter jurisdiction facially, i.e., without submitting any evidentiary materials. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001); 2 James Wm. Moore et. al, Moore's Federal Practice § 12.30[4] (3d ed. 2003). In resolving this challenge, the court must therefore accept U.S. Pipe's well-pleaded factual allegations as true and draw all reasonable inferences from them in U.S. Pipe's favor. Deniz v. Municipality of Guaynabo, 285 F.3d 142, 144

(1st Cir. 2002).

U.S. Pipe's counterclaim seeks relief through the Declaratory Judgment Act. Under the Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As its language makes clear, section 2201 does not enlarge the jurisdiction of the federal courts. Ernst & Young, 45 F.3d at 534. A court therefore cannot grant declaratory relief on a claim which is unripe for review. See id. (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)).

In Starter Corp. v. Converse, Inc., 84 F.3d 592 (2d Cir. 1996), the Second Circuit held that a claim for a declaration of trademark rights becomes ripe once the claimant "has engaged in a course of conduct evidencing a 'definite intent and apparent ability to commence use' of the marks on the product."[3] Id. at 595-96 (quoting Golden Gulf Corp. v.

_____

[3]This test for ripeness also requires that the adverse party's conduct has "created a real and reasonable apprehension of liability on the part of the [claimant]." Starter, 84 F.3d at 595; accord PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 79 (1st Cir. 1996); Hoyt Elec. Instrument Works, Inc. v. Isspro, Inc., 263 F. Supp. 2d 280,

<u>Jordache Enters., Inc.</u>, 896 F. Supp. 337, 340 (S.D.N.Y. 1995)); <u>accord</u> <u>G. Heileman Brewing Co. v. Anheuser-Busch, Inc.</u>, 873 F.2d 985, 991 (7th Cir. 1989); 5 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 32:51 (4th ed. 2003). The parties agree on the applicability of this test but dispute whether U.S. Pipe satisfies it on the basis of the allegations in the counterclaim.

U.S. Pipe is correct that it need not have commenced actual use of the redesigned hydrant in order to ripen its declaratory judgment claim. <u>See</u> <u>Starter</u>, 84 F.3d at 595; <u>G. Heileman</u>, 873 F.2d at 990. Before seeking a declaration of its rights in a mark, however, a party must have at least become "engaged in meaningful preparation such that it is actively preparing to produce the article in question."[4] <u>Starter</u>, 84 F.3d at 596 (internal quotation marks and citation

---

284 (D.N.H. 2003). The plaintiffs do not challenge the ripeness of U.S. Pipe's counterclaim on this basis, however.

[4]The <u>Starter</u> court adopted this test despite its recognition of the principle that "the finding of an actual controversy should be determined with some liberality" in a declaratory judgment action over trademark rights. 84 F.3d at 596. U.S. Pipe's reliance on this statement is therefore unavailing unless the allegations of its counterclaim satisfy the <u>Starter</u> test. <u>See</u> <u>id.</u> ("the most liberal interpretation of justiciability will not admit to an active controversy in the absence of either some imminent infringing conduct or <u>some assertion of the same</u>") (internal quotation marks omitted).

7

omitted); see also 5 McCarthy § 32:51 ("While the plaintiff need not engage in actual sales, it must demonstrate that it has taken the kind of tangible steps toward product launch that are normal in this industry.")

U.S. Pipe alleges only that it has "effect[ed] a re-design" of its original hydrant which "entirely eliminates the specific design elements upon which [the plaintiffs] expressly relied" in their complaint in this action and that the plaintiffs have nevertheless "voiced [their] objection." Although U.S. Pipe has submitted a "picture depicting [its] new design" as an exhibit to the answer, the exhibit is merely a computer-generated sketch of the design. The counterclaim therefore does not allege any facts from which the court can conclude that U.S. Pipe is actively preparing to produce the redesigned hydrant.[5] Cf. Starter, 84 F.3d at 596 (in addition to completing design, claimant had "invested a significant

---

[5]In its brief in opposition to the plaintiffs' cross-motion, U.S. Pipe states that it is "moving forward with its new design" and that it "had clearly taken steps toward introducing its new hydrant" when the plaintiffs submitted their reply to the counterclaim. U.S. Pipe has not moved or otherwise indicated that it intends to amend its counterclaim to include these allegations, however. In any event, even if the court could consider these statements in deciding whether U.S. Pipe's counterclaim was ripe for adjudication, they are far too conclusory to provide any assistance in that endeavor.

amount of time and money," conducted a consumer survey, and made decisions as to manufacturing and licensing); G. Heileman, 873 F.2d at 991 (claimant alleged that it would introduce product "in the immediate future," that it had already incurred costs of product development, design, advertising, and market study, and that it was "committed to making rapidly increasing expenditures totalling millions of dollars"); NTN Communications, Inc. v. Interactive Network, Inc., 1995 WL 569419, at *2 (N.D. Cal. 1995) (recognizing ripeness of declaratory relief action when defendant had admitted its intent to resume using claimant's mark in coming year).

To the contrary, U.S. Pipe's allegations suggest that its "meaningful preparation" of the redesigned hydrant, if any, will await the court's decision on the counterclaim. As the Federal Circuit has observed, declaratory relief in a trademark case is not available on the theory that "'[w]e would like to use the mark, but before we do, we want a court to say we may do so safely.'" Windsurfing Intl. Inc. v. AMF Inc., 828 F.2d 755, 758 (Fed. Cir. 1987); see also Joint Stock Soc'y v. UDV N. Am., Inc., 53 F. Supp. 2d 692, 706-707 (D. Del. 1999) (although plaintiffs refrained from use of mark "out of a genuine fear" of being sued for infringement, Lanham

9

Act claims dismissed as unripe because "out of an apparent over-abundance of caution, the plaintiffs have not taken any steps to enter the [relevant] market"), aff'd, 266 F.3d 164 (3d Cir. 2001).

U.S. Pipe contends that "greater leeway for an actual controversy should be allowed where, as here, the parties are actually engaged in ongoing litigation."  In making this argument, U.S. Pipe relies heavily on Intel Corp. v. CFW Wireless, Inc., 2000 WL 1455830 (W.D. Va. Sept. 15, 2000), where the court ruled that the defendant's counterclaim, seeking a declaration that it was entitled to use "InTelos" as a mark in the event the plaintiff prevailed on its claim that the defendant's use of "Intelos" was illegal, was ripe.  Id. at *1.  As the plaintiffs point out, however, the defendant in Intel had "taken concrete steps toward producing" the mark and had "repeatedly represented to the court that . . . [it] immediately [would] implement use of the 'InTelos' mark" if the plaintiff prevailed on its infringement claim.  Id. at *2, *3.

Here, U.S. Pipe's counterclaim does not reference any "concrete steps" toward producing the redesigned hydrant, other than the redesign itself, and its submissions do not contain any such representations.  See footnote 5, supra.

10

Accordingly, the court concludes that U.S. Pipe's request for a declaratory relief does not fall within the greater "leeway" which Intel allowed such a request when brought as a counterclaim in an infringement action arising out of a similar mark.[6]  See Windsurfing, 828 F.2d at 758 (dismissing as unripe counterclaim for declaratory judgment brought in infringement action based on same mark); Thrifty Rent-A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc., 849 F. Supp. 1083, 1086 (D.S.C. 1991) (same).

U.S. Pipe has failed to allege facts sufficient to show conduct on its part evincing a definite intent and apparent ability to use the redesigned hydrant.  Its counterclaim for a

---

[6]The decision in Intel also relied in large part on its understanding of the Fourth Circuit's test for the ripeness of a declaratory action, which it articulated as "whether a decision by the court will make a meaningful difference to the parties by affording meaningful relief."  2000 WL 1455830, at *2 (citing R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 955 (4th Cir. 1999)).  The First Circuit, however, treats that inquiry as but one of the two prongs of the ripeness inquiry. See McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003) (also considering "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all") (internal quotation marks omitted).  Given its determination that Intel is otherwise distinguishable, this court expresses no opinion on whether Intel's more relaxed standard of ripeness for a declaratory claim brought as a counterclaim to an infringement suit squares with First Circuit precedent.

declaratory judgment that the redesigned hydrant will not infringe any of the plaintiffs' trademark rights is therefore unripe for review at this point. The plaintiffs' cross-motion for judgment on the pleadings on that claim is granted.

II. U.S. Pipe's Motion for Judgment on the Pleadings

Because the court has dismissed as unripe U.S. Pipe's counterclaim for a declaratory judgment, it follows that U.S. Pipe's own motion for judgment on the pleadings on that claim is now moot.

Conclusion

For the foregoing reasons, the plaintiffs' partial cross-motion for judgment on the pleadings (document no. 46) is GRANTED. Count I of U.S. Pipe's counterclaim is dismissed as unripe at this time. U.S. Pipe's partial motion for judgment on the pleadings (document no. 41) is moot.

In view of the rulings made in this order, the court is concerned as to whether or not the plaintiffs' claims are moot. It appears that the parties are in agreement that those claims relate solely to the hydrant which U.S. Pipe exhibited at the March 2003 trade show. In its counterclaim, however, U.S. Pipe states that it decided to forego manufacturing this

12

hydrant after being served with the complaint in this action. With one exception, the remaining counts of the plaintiffs' complaint seek only to enjoin the production or sales of the hydrant as originally designed. If U.S. Pipe has indeed decided to stop producing this version of the hydrant, the parties ought to be able to resolve this matter promptly before more of their resources and those of the court are expended on this case. Therefore, counsel and the parties shall confer to review settlement of this matter by stipulation or consent decree. Counsel shall file a joint status report with the court by February 20, 2004.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 22, 2004

cc:  Brian L. Michaelis, Esquire
     Brian E. Moran, Esquire
     David B. Wilson, Esquire